# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BRENDA COTHRON, Individually and as the MOTHER OF TRAE SPURLOCK and as the Wrongful Death Representative of Trae Spurlock and as the Person who has Applied as the Personal Representative of the Estate of TRAE SPURLOCK, Deceased,<br><br>Plaintiff,<br><br>-v-<br><br>CITY OF CASPER, WYOMING, CASPER POLICE DEPARTMENT, CASPER POLICE OFFICERS, WILLIAM MAPLES, JOCELYN PADILLA AND BRENDEN LAPOINTE, AND JOHN DOES 1-10,<br><br>Defendants. | Case No. |

| **COMPLAINT** |
|---|

COMES NOW, the Plaintiff, Brenda Cothron, Individually and as the Mother of Trae Spurlock and as the Wrongful Death Representative of Trae Spurlock and as the Person who has applied as the Personal Representative of the Estate of Trae Spurlock, Deceased and alleges the following:

1.      This action is brought by the Plaintiff against the Defendants, the City of Casper, Wyoming, more particularly John Does (1-10) individually and as employees/peace officers/instructors of the Casper Police Department, the Casper Police Department and William Maples (Maples), Jocelyn Padilla (Padilla) and Brenden LaPointe (LaPointe) (collectively, "The Officers") for their use of excessive and deadly force resulting in the unlawful shooting death of Trae Spurlock ("Spurlock") under the color of law in violation of his individual rights under the Second and Fourth Amendments of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983.

2.      Plaintiff alleges that the City of Casper, Wyoming ("City"), John Does (1-10) individually and as employees/peace officers/instructors of the Casper Police Department, the Casper Police Department ("Police") and their policymakers (collectively, "Policymakers") failed to properly hire, train, supervise, screen, monitor, discipline, transfer, counsel or otherwise control officers who are known, or should have been known, to engage in the use of excessive force and/or deadly force.  The Policymakers had a duty, but failed to implement and/or enforce policies, practices and procedures for the Police that respected Trae Spurlock's constitutional rights to assistance and protection.  The Policymakers' failures listed above caused Trae Spurlock's unwarranted and excruciating physical and mental anguish and death.

3.      Plaintiff alleges that City of Casper, Wyoming ("City"), Casper Police Department ("Police") and their Policymakers (collectively, "Policymakers") failed to provide appropriate training and / or provided training of the Officers faced with the situation which occurred in this case that was negligent, dangerous and deadly to the innocent public causing Trae Spurlock's unwarranted and excruciating physical and mental anguish and death.  These Policymakers set forth official policies to be followed by the officers and as a result of this training and / or the lack of training resulted in the violation of Trae Spurlock's constitutional rights were violated causing Trae Spurlock's unwarranted and excruciating physical and mental anguish and death.

4.      Plaintiff alleges that The Officers in this case were plainly incompetent and knowingly violated the law when they caused Trae Spurlock's unwarranted and excruciating physical and mental anguish and death.

5.      Plaintiff seeks answers and compensation for damages and the wrongful death of Trae Spurlock.

6.      Plaintiff Brenda Cothron is the age of majority and is a resident of Ten Sleep, Wyoming.  Brenda Cothron has brought this matter individually and as the Mother of Trae Spurlock and as the Wrongful Death Representative of Trae Spurlock and as the Person Who has Applied as the Personal Representative of the Estate of Trae Spurlock, Deceased.

7.      Defendant Officers William Maples, Jocelyn Padilla and Brenden LaPointe are individuals who may be served upon information and belief through the Casper Police Department as employees/police officers.

8.      Defendant the City of Casper, Wyoming is a governmental entity located in Natrona County, Wyoming.  The City of Casper operates the Casper Police Department ("CPD").  The City of Casper funds and operates the CPD, and is responsible for the implementation of the police department's budget, procedures, policies, practices and customs as well as the acts and omissions, changed by this suit.  The CPD is responsible for investigative, preventive, and enforcement services for all citizens of The City of Casper.  The City of Casper may be served by and through the City Attorney. Additionally, service can be made on the Casper City Manager and / or the City Clerk.

9.      As required by W.S. §1-39-113(d)(i), the claim described under W.S. §1-39-113(c) was filed with the City of Casper and the Casper Police Department..  As required by W.S. §1-39-113(e).  The Claim was filed with the Casper City Attorney, The Chief of Police of the Casper Police Department, the City Clerk of Casper.  As required by W.S. §1-39-113(d)(iii).    The Plaintiff's claim was in compliance with the signature and certification requirement of Article 16, section 7 of the Wyoming Constitution.

JURISDICTION AND VENUE

10.    Jurisdiction exists ion this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights privileges and immunities guaranteed to decedent Trae Spurlock by constitutional and statutory provisions.  Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Wyoming.

11.    Venue is proper in this court because the causes of action occurred within the District of Wyoming.

FACTS

12.    On the evening of June 6th, 2024, Trae Spurlock was located in the 5000 Block of Pay it Forward Drive in The Ridge at Blackmore Apartments in Casper, Natrona County, Wyoming.

13.    Defendant Officers William Maples, Jocelyn Padilla and Brenden LaPointe responded to the apartment that was leased in the name of Trae Spurlock due to a report made by Makayla Kelch.  Upon arrival the Officers encountered the locked apartment leased in the name of Trae Spurlock.  MaKayla Kelch was not inside the apartment at the time of the Officers arrival.  The Officers did not obtain a warrant to enter into the apartment of Trae Spurlock instead illegally entering using keys that were in the possession of MaKayla Kelch.

14.    Upon entry into the apartment Trae Spurlock directed the Officers to leave as they were trespassing.  The Officers refused and told Trae Spurlock they were there to allow MaKayla Kelch to obtain her belongings.

15.    That the Officers engaged with Trae Spurlock for more than 13 minutes in conversation.  At no point in time did Trae Spurlock make any aggressive moves towards the Officers and in fact was quite articulate.  For more than 13 minutes the Officers could

have deescalated the situation.   They could have left the apartment.   If they were determined to arrest Trae Spurlock they could have obtained a warrant, they could have simply waited until the following day and served Trae Spurlock with a citation.   There was no-one in danger.   There was no reason for the Officers to continue to escalate the situation.   While there was a rifle on the balcony at no point while the officers were present did Trae Spurlock exercise control over the rifle.

16.    Officer Maples ultimately made a sudden escalation towards Trae Spurlock and deployed his Taser in the direction of Trae Spurlock as Mr. Spurlock turned to exit the room.   It should be noted that Trae Spurlock turned in the direction that is away from the rifle.   When the Taser struck Trae Spurlock he dropped to the ground.   Officer Maples then threw his Taser to the side and withdrew his firearm.   Trae Spurlock dropped to the ground either from the Taser being deployed or tripping.   Again, Trae Spurlock did not have control over the rifle.   There was a chair between him and the rifle.   While Trae Spurlock was on the ground Officer Maples shot Trae Spurlock hitting him upon information and belief seven (7) times.

17.    The CPD failed to provide adequate training to the Officers in this matter on the use of deadly force.

18.    The CPD failed to provide adequate training to the Officers in this matter on proper arrest and confrontation techniques.

19.    The CPD failed to provide adequate training in methods and techniques to control situations similar to the one created by Trae Spurlock.

20.    The Defendants knew or should have known that the training provided to the Officers was inadequate or nonexistent.

21.    The Defendants knew or should have known that the training provided to the Officers as to proper warrant and entry procedures was inadequate or nonexistent.

22.    Upon information and belief at the time the Defendant Officers drew their firearms, there had been no previous interaction between Trae Spurlock and the Officers,

and at no time did Trae Spurlock resist in any way that would justify the Defendants' use of deadly force.  The drawing of an Officer's weapon inherently assumes that the use of force will cause death or serious bodily injury to the suspect, and is to be applied under very narrowly defined circumstances.

23.    Defendant Officers unlawful and unwarranted acts, lack of training and the official customs or policies (written or otherwise) of the CPD caused Trae Spurlock's death.

24.    There is no evidence that Defendant Officers or anyone else were in danger of imminent death or great bodily harm.  At the time the Officer Maples shot Trae Spurlock he was already on the ground.  There were no struggles that would indicate that the use of excessive and/or deadly force was justified.

25.    Trae Spurlock posed no risk to the Officers or anyone else in the immediate area. Trae Spurlock's girlfriend was no longer in the home.  Trae Spurlock did not attempt to harm the Defendant Officers.   The death of Trae Spurlock was directly related to the Officers own conduct in escalating a situation that there was no need to escalate.

26.    Defendant Officers unlawful and unwarranted acts, lack of training and toe official customs or policies of the CPD caused Plaintiff's injuries and death.  As a direct and proximate result of the Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss.

27.    Upon information and belief, the CPD has not implemented policies and procedures to aggressively curtail death and/or injuries as result of the improper use of deadly force.   The CPD has provided grossly inadequate, reckless and dangerous techniques that practically mandate the use of deadly force with negligible training given in the use of non-lethal force in situations such as that which occurred in this case.

EXCESSIVE FORCE BY DEFENDANTS (Individually and in their official capacity)

COUNT I - 42 U.S.C. § 1983

28.    Plaintiff incorporates by reference paragraphs 1 through 27 as if fully set forth herein.  Plaintiff would show that Defendant Officers actions on the occasion in question

were wrongful, malicious and reckless in depriving Trae Spurlock of his constitutional rights, as alleged more fully below.

29.    Plaintiff will show that at all times material hereto, Defendant Officers had a duty to avoid infliction of unjustified bodily injury to Trae Spurlock, to protect his bodily integrity and to not trample on his constitutional rights.

30.    Plaintiff will show that Defendant Officers failed to act as reasonable officers would have acted in the same or similar circumstances.  That is, Defendant Officers, without justification and the need to do so, used excessive and deadly force as described above and killed Trae Spurlock without legal justification.  Trae Spurlock never made any threatening gestures toward Defendant Officers and did not pose an immediate threat to the safety of Defendant Officers or others.

31.    Defendant Officers were not provoked and when Office Maples fired multiple shots at Trae Spurlock while he was on the ground and at close range there wa son lawful or justifiable reason.  Trae Spurlock did as a result of multiple gunshot wounds.  The excessive and deadly force used by Defendant Officers was not reasonable, justified nor was it necessary under the circumstances.

32.    Defendant Officers' actions were not objectively reasonable because they followed a procedure designed to inflict excessive and deadly force in restraining individuals in a non-life threatening situation.

33.    Plaintiff will show that Defendant Officers denied Trae Spurlock his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

34.    The force used by Defendant Officers was unnecessary, excessive and unreasonable under the circumstances, as Trae Spurlock did not pose an immediate threat to the safety of Defendant Officers or others and the use of such excessive and deadly force was unnecessary.  Defendant Officers embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Trae

Spurlock to suffer extreme and severe mental and emotional distress, agony and anxiety and death.

35.    As a result of these Constitution violation to Trae Spurlock and the injuries he sustained, Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages".

## FAILURE TO TRAIN BY THE CITY OF CASPER
## COUNT II 42 U.S.C. § 1983

36.    Plaintiff incorporates paragraphs 1 - 35 as if fully set forth herein.

37.    Defendant Officers at the scene of the shooting incident were acting under color of law and acting pursuant to customs, practices and policies of the City of Casper and the CPD in regards to the use of deadly force as authorized and/or ratified by the Policymakers.  Trae Spurlock was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States by the City of Casper and CPD failing to provide proper training, adequate supervision or discipline in dealing with individuals such as Trae Spurlock in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the abolition cited constitutional provisions.

38.    With respect to the claims made the basis of this lawsuit, the City of Casper and the CPD failed to adequately train its officers on how to deal with individuals in the situation on June 6th, 2024 without the use of deadly force.  The failure to train its officers in a relevant respect reflects a deliberate indifference by the City of Casper to the right of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

39.    Defendant the City of Casper developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of deadly force. The CPD's training was designed and implemented under the direction of the City Manger / City Clerk and the CPD to act in this regard.

40.    The City of Casper and the CPD failure to provide adequate training to its officers on how to deal with individuals during an event similar to the one at issue in this case and

the subsequent use of deadly force reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Trae Spurlock's constitutional rights, including his death, a reasonable probability.

41. Plaintiff would show that Defendant Officers' actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the city of Casper and the CPD knew or should have known but never provided the requisite and proper training.

42. On information and belief, Defendant, the City of Casper, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Trae Spurlock failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection assistance to Trae Spurlock and implemented policies, procedures and practices which actually interfered with or prevented Trae Spurlock from receiving the protection, assistance and care he deserved.

43. For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Trae Spurlock's constitutional rights:

a. The City of Casper and the Casper Police Department failure to adequately train, supervise or discipline its officers who commit a wrongful act;

b. Defendants' policy on the proper use of deadly force;

c. Defendants' inadequate training on how to deal with individuals during an event such as the one at issue in this case;

d. Using deadly force against Trae Spurlock when he was in his own home and having a relatively civil conversation with the Officers for more than thirteen (13) minutes.

e. Using deadly force against Trae Spurlock although he caused no immediate threat.

44.    In addition, Defendant City of Casper and the CPD, as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of deadly force.  In so doing, Defendant City of Casper knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred - - *i.e.,* Trae Spurlock's death - in all reasonable probability would occur.

45.    The City of Casper's failure to properly train and discipline its officers was the proximate cause of the violations of Trae Spurlock's constitutional rights.

## WRONGFUL DEATH

46.    Plaintiff incorporates by reference paragraphs 1 through 45 as if fully set forth herein.

47.    By reason of the Defendant Officers wrongful conduct of killing Trae Spurlock without the threat of imminent death or serious bodily har, all Defendants are liable for damages.

48.    Defendant Officers' conduct that caused Trae Spurlock's death was a proximate cause of Trae Spurlock's injury, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, loss of financial contribution and for their acts the infliction of emotional distress caused by the wrongful killing of Trae Spurlock.

49.    Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages".

## DAMAGES ALL DEFENDANTS

50.    Plaintiff incorporates by reference paragraphs 1 through 49 as if fully set forth herein.   Defendants' acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiff and decedent:

a.    Actual damages;

b.      Loss of affection, consortium, comfort, financial assistance, protection, affection and care;

c.      Pain and suffering and mental anguish suffered by Trae Spurlock prior to his death;

d.      Mental anguish and emotional distress suffered by Plaintiff and those she represents;

e.      Loss of quality of life;

f.      Funeral and burial expenses;

g.      Loss of service; loss of future earnings and contributions to those the Plaintiff represents;

h.      Exemplary and punitive damages as well as costs of court;

i.      Pursuant to 42 U.S.C.§1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

j.      Prejudgment interest; and

k.      Post-Judgment interest.

51.    Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court and at a minimum in an amount of $5,000,000.00.

## COSTS AND ATTORNEY FEES

52.    Plaintiff incorporates by reference paragraphs 1 through 51 as if fully set forth herein.   Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. §1988(b).  As such, Plaintiff requests the Court to award costs and attorney fees incurred in Plaintiff's prosecution of this litigation.

## JOINT AND SEVERAL LIABILITY

53.    Plaintiff incorporates by reference paragraphs 1 through 52 as if fully set forth herein.  Plaintiff would show that the Defendants were jointly and severally liable for the gross negligence, which was the proximate cause of Plaintiff's injuries.

## JURY DEMAND

54.     Plaintiff demands a 12 Person Jury Trial in this matter.


THEREFORE, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; attorney's fees and costs and for such other and further relief, both general and special, at law and in equity, to which Plaintiff is justly entitled.


Dated June 4, 2026


APEX Legal, P.C.

*Christopher J. King*

Christopher J. King
WSB 7-4532
PO Box 552
Worland, WY 82401
(307) 347-9801
chris@wyoattorney.com