Amy M. Iberlin, WSB No. 7-5322
WILLIAMS, PORTER, DAY, & NEVILLE, P.C.
159 N. Wolcott St., Ste. 400 (82601)
P.O. Box 10700
Casper, WY 82602
(307) 265-0700 | Fax: (307) 266-2306
aiberlin@wpdn.net

*Attorney for Defendants City of Casper, Casper Police Department, and Officers William Maples, Jocelyn Padilla, and Brenden LaPointe in Their Official Capacities*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| BRENDA COTHRON, Individually and as the MOTHER OF TRAE SPURLOCK and as the Wrongful Death Representative of Trae Spurlock and as the Person who has Applied as the Personal Representative of the Estate of TRAE SPURLOCK, Deceased, | ) | Case No. 2:26-CV-00180-KHR |
| Plaintiff, | ) | |
| vs. | ) | |
| CITY OF CASPER, WYOMING, CASPER POLICE DEPARTMENT, CASPER POLICE OFFICERS, WILLIAM MAPLES, JOCELYN PADILLA AND BRENDEN LAPOINTE, AND JOHN DOES 1-10, | ) | |
| Defendants. | ) | |

---

**DEFENDANTS CITY OF CASPER, CASPER POLICE DEPARTMENT, AND OFFICERS WILLIAM MAPLES, JOCELYN PADILLA, AND BRENDEN LAPOINTE, IN THEIR OFFICIAL CAPACITIES, MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

---

Defendants City of Casper ("the City"), Casper Police Department ("CPD"), and Officers William Maples, Jocelyn Padilla, and Brenden LaPointe (collectively, "the Officers"), in their official capacities (collectively, the "Municipality Defendants"), by and through undersigned counsel and pursuant to FED. R. CIV. P. 12(b)(6), hereby move to dismiss Plaintiff's *Complaint* as follows:[1]

## I. INTRODUCTION AND BRIEF FACTS[2]

On the evening of June 6, 2024, Officers Maples, Padilla, and LaPointe responded to an apartment leased in the name of Trae Spurlock in Casper, Wyoming, due to a report made by MaKayla Kelch. *Compl.* at 4, ¶¶ 12–13; ECF No. 1. Plaintiff alleges the Officers entered the apartment without a warrant using keys in Ms. Kelch's possession and engaged with Mr. Spurlock in conversation for more than 13 minutes; a rifle was on the balcony. *Id.* at 4–5, ¶¶ 13–15. Plaintiff alleges Officer Maples deployed his Taser as Mr. Spurlock turned to exit the room and then shot him, upon information and belief, seven times. *Id.* at 5, ¶ 16. Mr. Spurlock died. *Id.* at 7, ¶ 31. The *Complaint* attributes the use of force to Officer Maples alone. *Id.* at 5, ¶ 16.

Plaintiff Brenda Cothron, Mr. Spurlock's mother, sues "Individually," as "the Wrongful Death Representative," and as "the Person who has Applied as the Personal Representative of the Estate." *Id.* at 1, 3, ¶ 6. She asserts Count I, a § 1983 excessive force claim against the Officers "Individually and in their official capacity"; Count II, a § 1983 failure to train claim against the

[1] This Motion is brought only on behalf of the City, CPD, and the Officers in their official capacities. Officers Padilla and LaPointe, in their individual capacities, have moved to dismiss, ECF Nos. 12, 13, and Officer Maples has answered, ECF No. 11.

[2] The factual background is taken from the *Complaint*, the well-pleaded allegations of which are accepted as true solely for purposes of this Motion.

City and CPD; and an unnumbered state-law wrongful death claim against all Defendants. *Id.* at 6–10, ¶¶ 28–49. She also alleges joint and several liability and seeks exemplary and punitive damages, prejudgment interest, and attorney's fees against all Defendants. *Id.* at 10–11, ¶¶ 50–53.

The *Complaint* does not identify a single policy, custom, prior incident, training deficiency, or final policymaker. Count I rests entirely on the Officers' conduct on one night, and Count II recasts that single incident as a "policy." This Court has dismissed materially identical—and in several respects more detailed—official-capacity and *Monell* claims three times. *See Woods I*; *Woods II*; *Groves*.[3] In addition, CPD is not a suable entity; no Second Amendment or "protection and assistance" claim is pleaded; Plaintiff has not alleged capacity to assert the Estate's § 1983 claims and has no individual § 1983 claim; Plaintiff's state-law claim is limited to wrongful death and wrongful death damages; Wyoming law bars joint and several liability on that claim; and punitive damages, prejudgment interest, and attorney's fees are barred against the Municipality Defendants. This Motion does not seek dismissal of the City's statutory liability, if any, on the wrongful death claim under WYO. STAT. ANN. § 1-39-112, but does seek dismissal of the damages, remedies, and theories the law does not permit on that claim.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

[3] *Woods v. City of Cheyenne*, No. 23-CV-35-KHR, ECF No. 16 (D. Wyo. Apr. 25, 2023) ("*Woods I*") (Rankin, M.J.); *Woods v. City of Cheyenne*, No. 24-CV-174-R, ECF No. 19 (D. Wyo. Dec. 3, 2024) ("*Woods II*"); *Groves v. City of Cheyenne*, No. 25-CV-135-R, ECF No. 29 (D. Wyo. Sept. 11, 2025) ("*Groves*").

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts "all well-pleaded factual allegations in a complaint" as true, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), and its function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted). But "[l]abels, legal conclusions, and formulaic recitations of the elements are insufficient to survive a motion to dismiss." *Woods II*, ECF No. 19 at 3–4 (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "[A] court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## III. ARGUMENT

### A. The Casper Police Department Is Not a Separate Entity Capable of Being Sued.

Capacity to be sued is determined by state law. FED. R. CIV. P. 17(b)(3). Plaintiff herself alleges that "[t]he City of Casper operates the Casper Police Department" and "funds and operates the CPD." *Compl.* at 3, ¶ 8. A municipal police department is not a separate suable entity; the proper defendant is the municipality. *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("The 'City of Denver Police Department' is not a separate suable entity, and the complaint will be dismissed as to it."), *vacated on other grounds sub nom. Tyus v. Martinez*, 475 U.S. 1138 (1986). Because the City is already a Defendant, every claim against CPD is duplicative and should be dismissed. Every claim against CPD also fails for the reasons the claims against the City fail. *See Woods II*, ECF No. 19 at 14, 20; *Groves*, ECF No. 29 at 19, 21.

### B. Count I (Excessive Force) Must Be Dismissed as to the Municipality Defendants.

#### 1. The official-capacity claims are claims against the City, and Count I pleads only respondeat superior liability.

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 978 F.3d 1165, 1175 (10th Cir. 2020). The official-capacity claims against the Officers are therefore redundant of the claims against the City and subject to the same *Monell* requirements. *See Graham*, 473 U.S. at 167 n.14 ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief."). And a municipality "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). "[V]icarious liability does not automatically attach when a municipal employee violates a person's constitutional rights while acting in the course and scope of their duties." *Woods I*, ECF No. 16 at 6 (citing *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022)). To state a claim against the City, Plaintiff must plausibly allege "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Crowson v. Washington Cnty., Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020).

Count I is, by its terms, a claim about what the Officers did on June 6, 2024. It alleges that the Officers "used excessive and deadly force," that Officer Maples "fired multiple shots at Trae Spurlock while he was on the ground," and that the force "was not reasonable, justified nor . . . necessary under the circumstances." *Compl.* at 7, ¶¶ 30–31, 34. It identifies no City policy, custom, or decision by a final policymaker. Its lone reference to municipal action—that the Officers

"followed a procedure designed to inflict excessive and deadly force"—does not say what the "procedure" is, who adopted it, or how it caused Officer Maples to fire. *Id.* ¶ 32. That is the type of bare assertion this Court has rejected: "a complaint must reference the specific policy or custom that was violated," and "the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted." *Woods I*, ECF No. 16 at 9 (quotations omitted).

This Court confronted the same pleading structure in *Woods II*, where an official-capacity excessive force claim alleged no policy or custom under its own heading. *Woods II*, ECF No. 19 at 4 n.2, 6. Because "Claim I is a § 1983 action against municipalities," the Court applied *Monell*, construed the complaint as a whole, and dismissed the official-capacity claim with prejudice, allowing it to proceed only against the officers individually. *Id.* at 4 n.2, 14, 19–20. *Groves* likewise dismissed the § 1983 claim against the City, its police department, and the officers in their official capacities. *Groves*, ECF No. 29 at 19, 21. Construed as a whole, the *Complaint* here pleads no policy or custom for the reasons set out in Section III(C), and Count I must be dismissed as to the Municipality Defendants.

**2. Without an underlying constitutional violation there can be no municipal liability, and the Complaint pleads no violation by Officers Padilla or LaPointe.**

A claim against a municipality requires the Court to answer two questions: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). "The absence of an affirmative answer to either of these questions is fatal to a claim against the municipality," and "a claim under § 1983 against either an individual actor or a municipality cannot survive a determination that there has been no constitutional violation." *Crowson*, 983 F.3d at

1186. Judges of this District routinely apply this principle. *See Ockinga v. Muzquiz*, No. 24-CV-240-SWS, ECF No. 71 at 29–31 (D. Wyo. Mar. 2, 2026); *Varos v. Webster*, No. 25-CV-10-ABJ, ECF No. 49 at 25 (D. Wyo. Mar. 2, 2026); *Sena v. Perea*, No. 20-CV-240-SWS, ECF No. 71 at 18 (D. Wyo. Mar. 8, 2022) ("Because the individual officers did not violate Plaintiff's constitutional rights, the City of Cheyenne cannot be held liable.") (citing *Lennen v. City of Casper*, No. 21-8040, 2022 WL 612799, at *10 (10th Cir. Mar. 2, 2022)).

Officers Padilla and LaPointe have moved to dismiss Count I because the *Complaint* alleges no use of force by either of them, and the Municipality Defendants join that argument. ECF No. 13 at 5–7; *see* Section III(I).[4] The *Complaint* attributes the Taser deployment and every shot to Officer Maples; the only act it attributes to Officers Padilla and LaPointe is that they "responded to the apartment." *Compl.* at 4–5, ¶¶ 13, 16. "[P]ersonal involvement is an essential allegation in a § 1983 action," and collective allegations against "the Officers" do not suffice. *Groves*, ECF No. 29 at 6–8 (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996), and citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Count I therefore fails against Officers Padilla and LaPointe in their official capacities, and their conduct cannot supply the underlying violation for any claim against the City. And should it be determined that Officer Maples did not violate Mr. Spurlock's rights, Counts I and II would fail against the Municipality Defendants entirely. *Crowson*, 983 F.3d at 1186–87.

### C. Count II Fails to State a Claim for Municipal Liability Under 42 U.S.C. § 1983.

Municipal parties can be sued under § 1983 only "when execution of a government's policy

---

[4] Because qualified immunity is not available to a municipality, the Municipality Defendants do not join the Officers' qualified-immunity argument. *See Ockinga*, ECF No. 71 at 29–30.

or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. A municipal policy or custom may take the form of "(1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice . . . ; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates . . . ; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted). Plaintiff alleges no formal policy or decision by a final policymaker; she appears to rely on an informal custom, ratification, and failure to train. *See Compl.* at 6, 8–10, ¶¶ 27, 37–45. Each theory fails.

**1. Informal Policy or Custom**

At the pleading stage, a plaintiff must allege "(i) why he or she thinks a policy exists—alleging specific facts; and (ii) what he or she thinks the policy is." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1216 (D.N.M. 2015). "[T]he plaintiff can plead either a pattern of multiple similar instances of misconduct . . . or use other evidence, such as a police officers' statements attesting to the policy's existence." *Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1039 (D.N.M. 2019). Isolated acts do not amount to a widespread practice. *Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1071 (D. Colo. 2021). The *Complaint* identifies no prior incident, complaint, or lawsuit involving any Casper officer, and no written policy. It asserts only that CPD "has not implemented policies and procedures to aggressively curtail death and/or injuries" and uses "grossly inadequate, reckless and dangerous techniques." *Compl.* at 6, ¶ 27. The "conduct, policies, and customs" listed in paragraph 43 merely restate the elements of a failure to train claim (items

(a)–(c)) or describe the June 6, 2024 incident itself (items (d)–(e)). *Id.* at 9, ¶ 43. This Court rejected nearly identical allegations in *Woods I*:

> Plaintiff's *Complaint* simply recites the elements of a *Monell* claim without identifying any policy or custom. Contrary to Plaintiff's argument, a complaint must reference the specific policy or custom that was violated. *Erickson v. City of Lakewood, Colorado*, 489 F. Supp. 3d 1192, 1206 (D. Colo. 2020). "[A]t the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted." *Id.* (quoting *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1215 (D.N.M. 2015)).

*Woods I*, ECF No. 16 at 9.

The plaintiffs in *Woods II* and *Groves* pleaded far more, and still failed. In *Woods II*, two prior incidents—including a Wyoming Supreme Court determination that officers had unlawfully entered the plaintiff's home—were "insufficient to establish a 'widespread practice.'" *Woods II*, ECF No. 19 at 8–10. In *Groves*, ten incidents over seven years did not plausibly suggest an "organizational custom." *Groves*, ECF No. 29 at 14–15. Plaintiff alleges none. Where liability rests on a single incident, "the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996); *see also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.") (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)). Plaintiff alleges no such decision.

### 2. Ratification

"[A] municipality will not be found liable under a ratification theory unless a final

decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. The approval "must precede the violative action." *Estate of Burnett v. City of Colo. Springs*, 616 F. Supp. 3d 1111, 1130 (D. Colo. 2022) (citing *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009)). A claimant must therefore identify the final policymakers who ratified the conduct; general references to "Defendants" do not suffice. *Erickson*, 489 F. Supp. 3d at 1207; *see Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009). Plaintiff alleges only that the Officers acted pursuant to customs "authorized and/or ratified by the Policymakers," a term the *Complaint* defines to mean all of the City Defendants collectively. *Compl.* at 2, 8, ¶¶ 2–3, 37. She identifies no final policymaker, ratifying act, or prior approval. A plaintiff who "does not identify the key policymakers who ratified the conduct" and "generally refers to 'Defendants' collectively" fails to state a ratification claim. *Woods II*, ECF No. 19 at 11; *see Groves*, ECF No. 29 at 15–17 (rejecting ratification theory that named a police chief).

#### 3. Failure to Train or Supervise

A failure to train claim requires that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and deliberate indifference ordinarily requires "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011). Deliberate indifference exists only "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."

*Waller*, 932 F.3d at 1284 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities.'" *Connick*, 563 U.S. at 62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

Plaintiff alleges no pattern. She alleges only that CPD "failed to provide adequate training" on deadly force, "proper arrest and confrontation techniques," and "methods and techniques to control situations similar to the one created by Trae Spurlock," and that the training was "inadequate or nonexistent." *Compl.* at 5, ¶¶ 17–21.[5] These are labels, not facts. As in *Woods I*, *Woods II*, and *Groves*, Plaintiff fails to "set forth any facts concerning how the individual defendants were trained, who they were trained by, or why their training was deficient." *Sanchez v. City of Littleton*, 491 F. Supp. 3d 904, 922 (D. Colo. 2020); *see Woods I*, ECF No. 16 at 9–10; *Woods II*, ECF No. 19 at 13; *Groves*, ECF No. 29 at 18–19. The allegation that training was "designed and implemented under the direction of the City Manager / City Clerk and the CPD" alleges nothing about what any official knew or decided. *Compl.* at 8, ¶ 39. This Court has rejected far more developed allegations: two prior incidents and deposition testimony in *Woods II*, ECF No. 19 at 12–14, and ten prior incidents plus legislative testimony criticizing statewide academy training in *Groves*, ECF No. 29 at 17–19.

Nor can Plaintiff invoke the narrow "single-incident" path, reserved for a municipality that provides *no* training on an obvious need, such as arming officers with no training on the constitutional limits of deadly force. *Connick*, 563 U.S. at 63–64 (discussing *City of Canton*, 489

[5] Paragraph 21 also alleges inadequate training "as to proper warrant and entry procedures." *Compl.* at 5, ¶ 21. No count asserts an unlawful-entry claim, and the only constitutional injury pleaded is the use of deadly force, so training on entry procedures could not have been the "moving force" behind the injury alleged.

U.S. at 390 n.10). The *Complaint* itself acknowledges that officers were trained, criticizing that training as "grossly inadequate." *Compl.* at 6, ¶ 27. Wyoming law also requires peace officers to complete basic training and certification. *See* WYO. STAT. ANN. §§ 9-1-701 through 9-1-711. "[T]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city," and it is not enough to show "that an injury or accident could have been avoided if an officer had had better or more training." *City of Canton*, 489 U.S. at 390–91. Count II should be dismissed.

### D. The Complaint States No Second Amendment Claim and No Claim for "Protection and Assistance."

Plaintiff invokes "the Second and Fourth Amendments," *Compl.* at 2, ¶ 1, but pleads no Second Amendment count and no fact suggesting any infringement of a right to bear arms; the only firearm referenced is a rifle on the balcony that Mr. Spurlock allegedly never controlled. *Id.* at 5, ¶¶ 15–16. Plaintiff also alleges a failure to respect Mr. Spurlock's "constitutional rights to assistance and protection." *Id.* at 2, 9, ¶¶ 2, 42. The Due Process Clause generally confers no affirmative right to governmental aid or protection. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Any claim premised on either theory should be dismissed.

### E. Plaintiff Has Not Alleged Capacity to Assert the Estate's § 1983 Claims and Has No Individual § 1983 Claim.

The *Complaint* does not allege that Plaintiff has been appointed as the Personal Representative of the Estate; it alleges only that she has "Applied." *Compl.* at 1, 3, ¶ 6. The Tenth Circuit treats a § 1983 claim arising from a death as a survival action belonging to the decedent's estate. *Berry v. City of Muskogee*, 900 F.2d 1489, 1506–07 (10th Cir. 1990); *see Robertson v. Wegmann*, 436 U.S. 584, 588–90 (1978). Such a claim must be prosecuted by the estate's

appointed personal representative as the real party in interest. FED. R. CIV. P. 17(a)(1), (b)(3); *see Gaston v. Life Care Ctrs. of Am., Inc.*, 2021 WY 74, ¶ 38, 488 P.3d 929, 941 (Wyo. 2021) (survival action "belonged to the estate").

Counts I and II assert Mr. Spurlock's own Fourth Amendment rights and seek his pre-death "[p]ain and suffering and mental anguish" and "[l]oss of quality of life." *Compl.* at 7, 11, ¶¶ 33, 50(c), (e). Those claims belong, if at all, to the Estate. Because the *Complaint* does not allege Plaintiff's appointment, they should be dismissed or, alternatively, dismissed without prejudice unless Plaintiff timely demonstrates her appointment and ratifies the action. *See* FED. R. CIV. P. 17(a)(3); *Gaston*, ¶¶ 35, 38, 488 P.3d at 940–41. Nor may Plaintiff pursue Counts I and II "Individually." A parent's § 1983 claim for loss of a familial relationship requires an allegation that the state actor intended to interfere with that relationship. *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985). None is alleged.

### F. Plaintiff's State-Law Claim Is a Wrongful Death Claim, and Only Wrongful Death Damages Are Recoverable.

Plaintiff's only state-law claim is captioned "Wrongful Death" and alleges that the Officers' conduct "caused Trae Spurlock's death." *Compl.* at 10, ¶¶ 47–48. Yet her damages allegations mix wrongful death damages with survival damages belonging to Mr. Spurlock and individual damages for her own emotional distress and loss of consortium. *Id.* at 10–11, ¶¶ 48, 50(b)–(e). To the extent Plaintiff asserts any such claim or damages against the Municipality Defendants, they should be dismissed.

#### 1. No survival claim or survival damages may be pursued.

This is a wrongful death case. The Wrongful Death Act applies "[w]henever the death of a person is caused by wrongful act, neglect or default such as would have entitled the party injured

to maintain an action to recover damages if death had not ensued." WYO. STAT. ANN. § 1-38-101. Wyoming's survival statute, in turn, expressly limits recovery when the injured person dies:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, injuries to the person, an injury to real or personal estate, or any deceit or fraud also survive. An action may be brought notwithstanding the death of the person entitled or liable to the same, but in actions for personal injury damages, if the person entitled thereto dies recovery is limited to damages for wrongful death.

WYO. STAT. ANN. § 1-4-101. Thus, "when a person dies as a result of injuries inflicted by another, the cause of action is limited to one for wrongful death." *Gaston*, ¶ 20, 488 P.3d at 936 (quoting *Robinson v. Pacificorp*, 10 P.3d 1133, 1140 (Wyo. 2000)). A survival action—with damages such as "medical expenses, lost wages, and pain and suffering"—lies only when the decedent "dies of another cause." *Id.* ¶ 19, 488 P.3d at 936. Separate claims may coexist only when the defendant causes "separate injuries to the decedent, some non-fatal and others fatal." *Id.* ¶ 22, 488 P.3d at 937. "A wrongful death plaintiff sues for his own 'injury' caused by the death of the decedent, not for the injury to the decedent," and "[p]ersonal injury damages are not recoverable in a wrongful death action." *Edwards v. Fogarty*, 962 P.2d 879, 883–84 (Wyo. 1998).

The *Complaint* alleges a single course of conduct that caused Mr. Spurlock's death and no separate, non-fatal injury. *Compl.* at 5, 7, ¶¶ 16, 31. The state-law claim is therefore limited to wrongful death, and the survival damages Plaintiff seeks—Mr. Spurlock's "[p]ain and suffering and mental anguish" and "[l]oss of quality of life"—are not recoverable on it. *Id.* at 11, ¶ 50(c), (e). Any such damages sought under § 1983 belong to the Estate. *See* Section III(E).

**2. The damages recoverable in a wrongful death action are limited by statute.**

Wrongful death beneficiaries may recover "fair and just" "pecuniary and exemplary

damages," "including damages for loss of probable future companionship, society and comfort," but they "cannot recover damages for their mental suffering." *Gaston*, ¶ 20, 488 P.3d at 937 (quoting WYO. STAT. ANN. § 1-38-102(c), and citing *Knowles v. Corkill*, 2002 WY 119, ¶¶ 14–18, 51 P.3d 859, 864–65 (Wyo. 2002)). Wyoming's pattern jury instruction accordingly limits wrongful death damages to:

> 1. The amount each such claimant has failed or will fail to receive from the decedent's earnings, as explained in the following instruction;
>
> 2. The loss of probable future companionship, society and comfort, which shall not include any damages for claimant's mental anguish; and
>
> 3. Any other monetary loss sustained and proved by any of the claimants resulting from the death of the decedent, including funeral expenses and other proper charges.

W.C.P.J.I. 6.02. Exemplary damages are barred against the Municipality Defendants. WYO. STAT. ANN. § 1-39-118(d).

Measured against these limits, the following categories of damages sought in the *Complaint* are not recoverable against the Municipality Defendants on the wrongful death claim and should be dismissed:

(a) Mr. Spurlock's pre-death "[p]ain and suffering and mental anguish" and "[l]oss of quality of life," *Compl.* at 11, ¶ 50(c), (e), which are survival damages;

(b) the "[m]ental anguish and emotional distress suffered by Plaintiff and those she represents," *id.* ¶ 50(d), and the "emotional pain and suffering" and "infliction of emotional distress" alleged in paragraph 48, which are mental-suffering damages the statute excludes;

(c) "consortium," "protection," and "affection" as freestanding items of loss, *id.* ¶ 50(b), except to the extent they are subsumed within the statutory "loss of probable future companionship, society and comfort"; and

(d) exemplary and punitive damages, prejudgment interest, and attorney's fees, *id.* ¶ 50(h)–(j).

Any recovery against the Municipality Defendants on the wrongful death claim is limited to the statutory beneficiaries' pecuniary losses—the support they would have received from Mr. Spurlock's earnings, lost services, and funeral and burial expenses—and their loss of probable future companionship, society, and comfort. WYO. STAT. ANN. § 1-38-102(c); W.C.P.J.I. 6.02.

**3. Plaintiff cannot recover emotional distress damages in her individual capacity.**

The *Complaint* alleges no physical injury to Plaintiff and does not allege that Plaintiff, who resides in Ten Sleep, observed the events of June 6, 2024. *Compl.* at 3, ¶ 6. Wyoming restricts recovery for emotional injury without physical injury:

> Recovery for purely emotional distress is permitted in Wyoming in certain limited underlying actions. These actions are: "1) some intentional torts, *Waters v. Brand*, 497 P.2d 875, 877–878 (Wyo. 1972) (false imprisonment); *Cates v. Eddy*, 669 P.2d 912, 921 (Wyo. 1983) (malicious prosecution); 2) violation of certain constitutional rights, *Town of Upton v. Whisler*, 824 P.2d 545, 549 (Wyo. 1992); and 3) breach of the covenant of good faith and fair dealing, *State Farm Mutual Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 833 (Wyo. 1994)." *Blagrove* [*v. JB Mech., Inc.*,] 934 P.2d [1273, 1275–76 (Wyo. 1997)]. We have also recognized the torts of intentional and negligent infliction of emotional distress, but we have done so only under limited circumstances. *Blagrove*, 934 P.2d at 1275; *Gates* [*v. Richardson*,] 719 P.2d [193, 195 (Wyo. 1986)] (negligent infliction of emotional distress limited by the requirements of a family relationship and observation of serious bodily harm); *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1066 (Wyo. 1986) (intentional infliction of emotional distress limited by the requirements of extreme or outrageous conduct and severe emotional distress).

*Cardenas v. Swanson*, 2023 WY 67, ¶ 12, 531 P.3d 917, 920 (Wyo. 2023) (quoting *Larsen v. Banner Health Sys.*, 2003 WY 167, ¶¶ 8–10, 81 P.3d 196, 199–200 (Wyo. 2003)). Plaintiff's

negligence-based wrongful death claim fits none of these categories, and she has no individual constitutional claim. *See* Section III(E). No negligent infliction claim is pleaded or possible, because Plaintiff does not allege she "observed the infliction of serious bodily harm or death" or its immediate aftermath. *Gates v. Richardson*, 719 P.2d 193, 199 (Wyo. 1986). Plaintiff's individual claims for emotional distress, mental anguish, and loss of enjoyment of life should be dismissed.

**4. Any loss of consortium or loss of filial consortium claim is precluded by Wyoming law.**

The WGCA "provides broad governmental immunity from tort liability." *Fugle v. Sublette Cnty. Sch. Dist. No. 9*, 2015 WY 98, ¶ 6, 353 P.3d 732, 734 (Wyo. 2015) (quotation omitted). It is "a 'close-ended' tort claims act, which means a claim is barred unless it falls within one of the statutory exceptions." *Campbell Cnty. Mem'l Hosp. v. Pfeifle*, 2014 WY 3, ¶ 20, 317 P.3d 573, 579 (Wyo. 2014); *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 709 (Wyo. 1987) (the WGCA is "a 'close-ended' waiver of governmental immunity in that unless a claim asserted against a municipality falls within one of the statutory exceptions, it will be barred"); *see also Hall v. Park Cnty.*, 2010 WY 124, ¶ 12, 238 P.3d 580, 584 (Wyo. 2010) ("The 'closed ended' WGCA does not provide for liability beyond its specific provisions . . . ."); *id.* ¶ 13, 238 P.3d at 584–85 (sovereign immunity "was abrogated by the Wyoming legislature only as strictly outlined in the WGCA"). A governmental entity "is liable for only those torts expressly recognized in [the WGCA]. ***Any invitation to add a particular tort to the statutory list must be addressed to that body.***" *Pfeifle*, ¶ 29, 317 P.3d at 581 (quoting *Hoff v. City of Casper-Natrona Cnty. Health Dep't*, 2001 WY 97, ¶ 32, 33 P.3d 99, 107 (Wyo. 2001)) (emphasis in original). "[S]ections 105 through 112 are the provisions of the Act that create exceptions to immunity and define a governmental

entity's liability." *Mem'l Hosp. of Sweetwater Cnty. v. Menapace*, 2017 WY 131, ¶ 15, 404 P.3d 1179, 1183 (Wyo. 2017). *See also May v. Se. Wyo. Mental Health Ctr.*, 866 P.2d 732, 736 (Wyo. 1993); *State Dep't of Corr. v. Watts*, 2008 WY 19, ¶ 20, 177 P.3d 793, 798 (Wyo. 2008). None waives immunity for a loss of consortium claim, and the WGCA therefore bars any such claim against the Municipality Defendants.

> The WGCA, at Wyo. Stat. Ann. § 1-39-102 (LexisNexis 2009), clearly evinces the legislature's intent that the WGCA "cover the field" of sovereign immunity and liability. And under the WGCA, immunity is the rule and liability the exception, for both the governmental entity and its public employee.

*Boyer-Gladden v. Hill*, 2010 WY 12, ¶ 21, 224 P.3d 21, 29 (Wyo. 2010).

Moreover, Wyoming does not recognize a parent's claim for loss of a child's companionship. In *Gates*, a child's mother and father filed claims for loss of filial companionship, alleging the defendant's negligence deprived them of the comfort and companionship of their son. 719 P.2d at 201. The Wyoming Supreme Court agreed with "[m]ost courts" that "a parent cannot recover for the loss of a child's companionship" and affirmed dismissal of those claims. *Id.* Plaintiff's remedy, if any, for the loss of her son's companionship lies solely in the wrongful death action, as a statutory beneficiary. WYO. STAT. ANN. § 1-38-102(c); *Gaston*, ¶ 20, 488 P.3d at 937. Any freestanding loss of consortium or filial consortium claim should be dismissed.

**5. Any state-law claim other than wrongful death was never presented under the WGCA and is barred.**

Plaintiff alleges compliance with WYO. STAT. ANN. § 1-39-113. *Compl.* at 3, ¶ 9.[6] Because the *Complaint* relies on the notice of claim, the Court may consider it on this Motion. *GFF Corp.*

[6] The *Complaint* also fails to state "[t]he date the claim . . . was filed," as WYO. STAT. ANN. § 1-39-113(d)(ii) requires. *Compl.* at 3, ¶ 9.

*v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (document "referred to in the complaint and . . . central to the plaintiff's claim" may be considered on a motion to dismiss). The notice of claim, the supporting affidavit, and the order appointing Plaintiff as wrongful death representative are attached as **Exhibit "A."** "No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission . . . ." WYO. STAT. ANN. § 1-39-113(a).

Plaintiff's notice presented only "the Wrongful Death claim for the decedent Trae Spurlock by and through the appointed Wrongful Death Representative, Brenda Cothron." Ex. A, Letter of May 28, 2026, at 1. The accompanying affidavit likewise states that it "is in support of the claims for the Wrongful Death of Trae Spurlock" and that Plaintiff was appointed "to pursue a claim for the Wrongful Death of Trae Spurlock on behalf of myself and his heirs and/or beneficiaries." Ex. A, Aff. of Brenda Cothron ¶¶ 3, 6. It presents no survival claim on behalf of the Estate and no individual tort claim by Plaintiff, and the two-year presentment period expired in June 2026. Any state-law survival claim, and any individual state-law claim for emotional distress, loss of enjoyment of life, or loss of consortium, is therefore also barred because it was never presented. This requirement applies only to Plaintiff's state-law claims. *See Felder v. Casey*, 487 U.S. 131, 134, 138 (1988) (state notice-of-claim statute pre-empted as applied to § 1983 action).

### G. Wyoming Law Does Not Permit Joint and Several Liability on Plaintiff's State-Law Claim.

Plaintiff alleges that "the Defendants were jointly and severally liable for the gross negligence." *Compl.* at 11, ¶ 53. "[I]n 1986, the Wyoming legislature abolished joint and several liability by amending WYO. STAT. ANN. § 1–1–109 to provide that a party at fault be required to

pay for his proportionate share of the fault." *Fuentes v. Jednat*, 2010 WY 40, ¶ 19, 229 P.3d 949, 953–54 (Wyo. 2010); *Haderlie v. Sondgeroth*, 866 P.2d 703, 708 (Wyo. 1993). "The adoption of comparative fault mandates that the trier of fact determine issues of proximate cause and allocate liability accordingly." *Fuentes*, ¶ 19, 229 P.3d at 954; *see Bd. of Cnty. Comm'rs of Teton Cnty. ex rel. Teton Cnty. Sheriff's Dep't v. Bassett*, 8 P.3d 1079, 1084 (Wyo. 2000) (under § 1-1-109, "[e]ach defendant is liable only to the extent of that defendant's proportion of the total fault"); *Schneider Nat'l, Inc. v. Holland Hitch Co.*, 843 P.2d 561, 569 (Wyo. 1992) ("The adoption of comparative fault was premised on the elimination of joint and several liability which the legislature accomplished with the 1986 amendments."). This Court has dismissed a joint and several liability claim on Wyoming state-law claims against a municipality, its police department, and its officers in their official capacities. *Groves*, ECF No. 29 at 19, 22. Plaintiff's joint and several liability claim on her state-law claim should likewise be dismissed.

### H. Punitive Damages Are Barred Against the Municipality Defendants, and Prejudgment Interest and Attorney's Fees Are Barred on the State-Law Claim.

*Federal claims.* A municipality is immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Because official-capacity claims are claims against the City (*Graham*, 473 U.S. at 166), the same rule applies to the Officers in their official capacities.

*State-law claim.* "No judgment against a governmental entity shall include an award for exemplary or punitive damages, for interest prior to judgments or for attorney's fees." WYO. STAT. ANN. § 1-39-118(d). The City is a "local government" (*id.* § 1-39-103(a)(i)), and the WGCA "clearly prohibits" such a judgment against it. *Prager v. Campbell Cnty. Mem'l Hosp.*, No. 10-

CV-202-J, 2011 WL 13229449, at *7 (D. Wyo. Mar. 18, 2011). This Court has repeatedly enforced § 1-39-118(d) against municipalities, their police departments, and officers in their official capacities. *Woods I*, ECF No. 16 at 6, 11; *Woods II*, ECF No. 19 at 18–20; *Groves*, ECF No. 29 at 20, 22. Plaintiff's requests for exemplary and punitive damages, prejudgment interest, and attorney's fees on the state-law claim should be dismissed as to the Municipality Defendants.[7]

**I. Joinder in the Motion to Dismiss of Officers Padilla and LaPointe.**

Pursuant to FED. R. CIV. P. 10(c), the Municipality Defendants join in Sections III(A) and III(B) of the Memorandum of Officers Padilla and LaPointe, ECF No. 13 at 5–8, to the extent applicable to them. First, because the *Complaint* pleads no constitutional violation by either Officer, Count I fails against them in their official capacities. *See* Section III(B)(2). Second, the City's liability on the wrongful death claim is derivative: "[a] governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties." WYO. STAT. ANN. § 1-39-112; *see Woods I*, ECF No. 16 at 5–6. A wrongful death plaintiff must "allege sufficient facts to show in what particular the defendant or defendants were negligent." *Lennen v. City of Casper*, No. 19-CV-41-SWS, 2021 WL 2885788, at *19 (D. Wyo. June 15, 2021) (quoting *Craft v. State ex rel. Wyo. Dep't of Health*, 2020 WY 70, ¶ 13, 465 P.3d 395, 400 (Wyo. 2020)), *aff'd*, 2022 WL 612799 (10th Cir. Mar. 2, 2022). Because the *Complaint* alleges no negligent act by Officer Padilla or Officer LaPointe, ECF No. 13 at 7–8, the wrongful death claim should be dismissed against them in their official capacities and against the City to the extent premised on their conduct.

[7] Plaintiff may continue to pursue punitive damages against the Officers in their individual capacities, subject to their separate defenses. *See Woods I*, ECF No. 16 at 6; *Woods II*, ECF No. 19 at 18–19.

## IV. CONCLUSION

The Municipality Defendants respectfully request that the Court enter an Order pursuant to FED. R. CIV. P. 12(b)(6):

(1) dismissing all claims against the Casper Police Department;

(2) dismissing Counts I and II as against the City, CPD, and the Officers in their official capacities, with prejudice, including any claim premised on the Second Amendment or a right to "protection and assistance";

(3) dismissing the § 1983 claims asserted on behalf of the Estate (or, alternatively, dismissing them without prejudice pending appointment and ratification under Rule 17(a)(3)) and those asserted by Plaintiff individually;

(4) dismissing the wrongful death claim against Officers Padilla and LaPointe in their official capacities, and against the City to the extent premised on their conduct;

(5) dismissing any state-law survival claim and survival damages, Plaintiff's individual emotional distress, loss of enjoyment of life, and consortium claims, and any state-law claim not presented under Wyo. Stat. Ann. § 1-39-113, and limiting the state-law claim to damages recoverable under Wyo. Stat. Ann. § 1-38-102(c);

(6) dismissing Plaintiff's claim of joint and several liability on her state-law claim; and

(7) dismissing Plaintiff's claims for exemplary and punitive damages against the Municipality Defendants on all claims, and for prejudgment interest and attorney's fees on the state-law claim.

DATED this 26th day of October 2026.

Amy M. Iberlin, WSB No. 7-5322
WILLIAMS, PORTER, DAY & NEVILLE P.C.
P.O. Box 10700
Casper, WY 82602
Phone: (307) 265-0700
Fax: (307) 266-2306
Email: aiberlin@wpdn.net

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing was served on the 27th day of October 2026, to the following:

| | |
|---|---|
| Christopher J. King<br>APEX LEGAL, P.C.<br>P.O. Box 552<br>Worland, WY 82401<br>chris@wyoattorney.com<br><br>*Attorney for Plaintiff* | ☒ CM/ECF<br>☐ U.S. Mail (Postage Prepaid)<br>☐ Fax<br>☐ E-mail<br>☐ Overnight Delivery<br>☐ Hand Delivery |
| Timothy W. Miller<br>Sean Towles<br>Senior Assistant Attorneys General<br>Wyoming Attorney General's Office<br>109 State Capitol<br>Cheyenne, Wyoming 82002<br>tim.miller@wyo.gov<br><br>*Attorney for Individual Defendants* | ☒ CM/ECF<br>☐ U.S. Mail (Postage Prepaid)<br>☐ Fax<br>☐ E-mail<br>☐ Overnight Delivery<br>☐ Hand Delivery |

WILLIAMS, PORTER, DAY & NEVILLE, P.C.