FILED

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

10:30 am, 11/25/26

Margaret Botkins
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| BRENDA COTHRON, Individually and as the MOTHER OF TRAE SPURLOCK and as the Wrongful Death Representative of Trae Spurlock and as the Person who has Applied as the Personal Representative of the Estate of TRAE SPURLOCK, Deceased,<br><br>Plaintiff,<br><br>-v-<br><br>CITY OF CASPER, WYOMING, CASPER POLICE DEPARTMENT, CASPER POLICE OFFICERS, WILLIAM MAPLES, JOCELYN PADILLA AND BRENDEN LAPOINTE, AND JOHN DOES 1-10,<br><br>Defendants. | Case No. 26-CV-00180-KHR |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MUNCIPALITY DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Plaintiff Brenda Cothron, through counsel, responds to the motion supported by ECF No. 15. The motion should be denied insofar as it seeks dismissal of the estate's federal claims based on representative capacity, elimination of federal compensatory remedies through state-law restrictions, or dismissal of the City's wrongful death liability

arising from Officer Maples's alleged conduct. The municipal-liability allegations must be assessed together with the incorporated factual allegations. If the Court finds those allegations insufficient, Plaintiff requests an opportunity to seek leave to amend rather than a merits dismissal with prejudice.

## I. INTRODUCTION AND SCOPE OF RESPONSE

The Complaint alleges that officers entered Trae Spurlock's apartment, refused his direction to leave, and conversed with him for more than thirteen minutes. It further alleges that he did not threaten the officers or exercise control over a rifle on the balcony; that Maples deployed a Taser as Spurlock turned away from the rifle; and that Maples shot Spurlock multiple times while he was on the ground. Compl. ¶¶ 13–16, 24–25. These are allegations, not findings, but they must be evaluated as allegations at this stage.

The municipal motion is not a motion by Maples in his individual capacity. Defendants expressly acknowledge that the City's statutory wrongful death liability, if any, is not generally the subject of their requested dismissal. ECF No. 15 at 2 n.1, 3. The Court should maintain those distinctions in any order.

Plaintiff does not contend that employment alone creates federal municipal liability. Nor does Plaintiff ask the Court to preserve duplicative party designations at the expense of deciding the actual claims. The issues are whether the City's own alleged training practices sufficiently state a federal claim, whether the estate's claims may proceed through its appointed representative, and which remedies attach to each cause of action.

## II. THE GOVERNING STANDARD REQUIRES PLAUSIBILITY, NOT PROOF, BUT DOES REQUIRE FACTUAL SUPPORT

The Court accepts well-pleaded facts and draws reasonable inferences for Plaintiff, while disregarding unsupported legal conclusions. *Waller v. City & County of Denver,* 932 F.3d 1277 (10th Cir. 2019). Plaintiff recognizes that this rule applies to municipal claims and that conclusory assertions of a policy, deliberate indifference, or causation are insufficient. *Manning v. City of Tulsa,* 170 F.4th 1287 (10th Cir. 2026).

The operative pleading incorporates its factual allegations into Counts I and II. Compl. ¶¶ 28, 36. The question is therefore not whether a particular count repeats every relevant allegation, but whether the pleaded facts, read together, support the required elements. Plaintiff does not seek to amend the merits allegations through this response or to obtain discovery solely in the hope that an otherwise unpleaded claim might emerge.

## III. THE CAPACITY OBJECTION DOES NOT WARRANT DISMISSAL OF THE ESTATE'S CLAIMS

Brenda Cothron was appointed personal representative of Trae Spurlock's estate on June 4, 2026, separately from her appointment as wrongful death representative. The Complaint was filed June 5, 2026. Its description of her as a person who had applied for estate appointment does not accurately state her appointment status at filing. Plaintiff requests leave to correct the caption and paragraph 6 to identify her existing estate capacity and to submit the appointment order through an appropriate request for judicial notice or other authorized procedure.

This response does not ask the Court to treat counsel's representation of appointment as evidence resolving a disputed factual issue under Rule 12(b)(6). It identifies a specific, curable

discrepancy and the correction Plaintiff seeks. Federal Rule of Civil Procedure 17(a)(1) permits an executor or administrator to sue in that representative's own name. If further formal ratification, joinder, or substitution is required, Rule 17(a)(3) provides a reasonable opportunity to complete that procedure before dismissal for failure to prosecute in the real party's name.

The proposed correction does not add a different shooting, victim, defendant, or constitutional injury. The original pleading expressly invoked the estate's interests and sought damages for Spurlock's injuries. Compl. ¶¶ 6, 33–35, 50(c). Rule 15(a)(2) and (c)(1)(B) support consideration of an amendment correcting capacity allegations concerning those same events.

Defendants' reliance on *Gaston v. Life Care Centers of America, Inc.,* 488 P.3d 929 (Wyo. 2021 does not justify a contrary disposition. Gaston distinguishes an estate survival claim from a beneficiaries' wrongful death claim and recognizes the corrective purpose of real-party-in-interest procedures. Plaintiff does not rely on Gaston's fact-specific waiver holding; Defendants raised their objection here at the pleading stage. The pertinent point is that an inaccurate description of representative status is not a basis to extinguish an otherwise cognizable estate claim without considering the available correction.

## IV. THE COMPLAINT ALLEGES AN UNDERLYING CONSTITUTIONAL INJURY; THE CITY'S OWN LIABILITY PRESENTS A SEPARATE QUESTION

**A. Maples's alleged shooting supplies the pleaded constitutional injury.**

The Complaint alleges that Spurlock was not threatening anyone, did not control the rifle, turned away from it, and was shot while on the ground. Compl. ¶¶ 15–16, 24–25, 30–34. Those allegations plausibly describe unreasonable deadly force. Manning applied the totality-of-the-

circumstances standard and held that the plaintiff-favorable account of shooting an unarmed, nonthreatening person supported a constitutional violation. *Manning,* 170 F.4th 1287.

The pleaded presence of a rifle does not permit the Court to replace the accompanying allegations with a finding that Spurlock held, reached for, or threatened the officers with it. Plaintiff does not contend that every shooting near an unsecured firearm is unconstitutional; the point is that the pleaded facts concerning access, movement, and threat control this motion.

Whether Padilla or LaPointe independently violated the Constitution does not resolve whether Maples did. Even if the Court finds insufficient allegations of personal participation by those two officers, that determination would not erase the distinct constitutional injury attributed to Maples. Plaintiff recognizes, however, that the underlying injury alone does not establish the City's responsibility for it.

**B. The training allegations must be evaluated as a claim about municipal conduct, not**

**merely employment.**

Count II alleges deficiencies in deadly-force training, arrest and confrontation techniques, and instruction on controlling encounters without unnecessary deadly force. Compl. ¶¶ 17–21, 27, 38–45. Paragraph 27 alleges dangerous training techniques that practically mandate deadly force with negligible nonlethal-force training. Paragraphs 39–45 attribute the program and its alleged deficiencies to the City and allege a causal connection to the shooting. Read with paragraphs 13–16, the claimed deficiency concerns officers' assessment of threats and transition from a nonlethal encounter to deadly force.

*City of Canton v. Harris,* 489 U.S. 378 (1989) recognizes municipal liability when a deliberately indifferent training deficiency actually causes a constitutional injury. It does not

require every actionable training program to be embodied in a facially unconstitutional written directive. Plaintiff therefore need not identify a written instruction expressly commanding unconstitutional shootings. She must, however, plausibly allege the relevant deficiency, deliberate indifference, and causation.

Plaintiff acknowledges the substantial limitation imposed by Waller and Manning. A shooting, standing alone, does not establish a municipal policy. The Complaint identifies no particular earlier similar incident. General allegations that the City knew or should have known training was deficient do not themselves supply facts showing notice. Plaintiff accordingly does not contend that the Complaint establishes a widespread pattern merely because three officers were present.

Manning also rejected a failure-to-train theory based on general de-escalation deficiencies and distinguished such allegations from the narrow situation involving an absence of training on an obvious constitutional need. Plaintiff submits that the allegations of nonexistent training in relevant respects, read with paragraph 27, warrant consideration of that narrow route. But she does not contend that the words "inadequate or nonexistent" automatically satisfy it. If the Court finds the allegations describe only insufficient nuance in existing training, rather than a plausibly pleaded absence of necessary instruction, Manning presents a serious obstacle.

A general state requirement of officer certification does not, by itself, establish the actual content of the City's training in the relevant subject. Conversely, Plaintiff cannot infer the absence of constitutional training merely from the alleged shooting. The Court should decide the sufficiency of the particular allegations, without treating either proposition as established by assumption.

**C. Any amendment must supply facts, not merely additional labels.**

If the Court concludes that the present allegations do not cross the plausibility threshold, Plaintiff requests an opportunity to submit a properly supported motion for leave to amend under Rule 15(a)(2). Any proposed amendment should identify the specific training omission or affirmative instruction, facts supporting notice or the narrow obvious-need exception, and the connection between that deficiency and the shooting, to the extent supportable under Rule 11. Plaintiff does not represent that unpleaded prior incidents or

particular policymaker decisions already have been established.

Nor does Plaintiff rely on unspecified post-shooting approval as an independent cause of the shooting. Waller rejects reliance on later failures to discipline as the cause of an earlier injury. The generalized ratification language should not distract from the pleaded training theory or prevent consideration of a factually supported amendment. Defendants' references to dismissals in other cases do not themselves establish that amendment in this case would be futile; that question depends on the proposed allegations, not simply the disposition of another complaint.

## V. FEDERAL SURVIVAL REMEDIES MUST REMAIN DISTINCT FROM WYOMING WRONGFUL DEATH REMEDIES

*Berry v. City of Muskogee,* 900 F.2d 1489 (10th Cir. 1990) requires a federal survival remedy brought through the deceased victim's estate when the constitutional violation causes death. Berry also recognizes that state wrongful death claims may coexist, while forbidding duplicate recovery.

Accordingly, restrictions on damages under Wyoming's wrongful death law do not authorize dismissal of the estate's federal requests for Spurlock's pre-death pain and suffering or

other compensable injuries recognized under Berry. Those damages require proof; Plaintiff does not seek automatic recovery based on the mere recitation of a category. The same loss cannot be recovered twice under different theories.

For the state claim, Wyo. Stat. Ann. § 1-38-102(c) authorizes fair and just damages, including probable future companionship, society, and comfort. Gaston distinguishes these beneficiaries' losses from the decedent's personal injury damages and from beneficiaries' mental suffering. Plaintiff seeks the statutory relational and pecuniary losses on the wrongful death claim; references to affection, care, services, or consortium should be understood to that extent, not as an attempt to create an additional freestanding filial-consortium tort.

Likewise, Plaintiff does not rely on the general references to emotional distress as a separately pleaded individual negligent-infliction claim. Any order excluding beneficiaries' grief as a freestanding state wrongful death damages category should preserve the recoverable loss of companionship, society, and comfort. The Court should distinguish an unavailable damages characterization from the viable wrongful death claim itself.

## VI. THE CITY'S PEACE-OFFICER WRONGFUL DEATH LIABILITY IS NOT DEFEATED BY THE MUNICIPAL FEDERAL PLEADING CHALLENGE

Wyo. Stat. Ann. § 1-39-112 imposes governmental liability for damages resulting from tortious conduct of peace officers acting within the scope of their duties. That statutory theory differs from federal municipal liability. A failure adequately to plead the City's own deliberately indifferent policy would not, by itself, defeat the City's liability for an officer's tortious conduct under the Wyoming statute.

The detailed allegations concerning Maples's Taser deployment and shooting remain central to that claim. The City expressly states that its motion does not seek dismissal of its

statutory wrongful death liability generally. ECF No. 15 at 3. Any ruling concerning insufficient allegations against Padilla or LaPointe must therefore be limited to the theory based on their conduct and must not dispose of the Maples-based claim against the City.

Plaintiff recognizes that the Complaint describes the conduct of Padilla and LaPointe less specifically. It attributes to the responding officers the entry into the apartment and refusal to leave, but attributes the Taser and shots to Maples. Compl. ¶¶ 13–16. Plaintiff does not ask the Court to invent an opportunity to intervene or additional conduct absent from the pleading. If further individualized allegations are necessary, Plaintiff requests the opportunity to seek amendment with supporting facts, rather than a ruling that the City has no wrongful death exposure from the incident.

## VII. THE NOTICE ATTACHMENT DOES NOT ELIMINATE THE PLEADED WRONGFUL DEATH CLAIM

Defendants' Exhibit A expressly presents a wrongful death claim arising from the June 6, 2024 shooting, identifies the responding officers, describes the incident, and demands compensation. ECF No. 15-1 at 4–7. It also includes the wrongful death appointment order. Id. at 8–9. Plaintiff relies on that notice for the pleaded state wrongful death claim, not to establish that a distinct individual emotional-distress tort or state survival claim was separately presented.

Wyo. Stat. Ann. § 1-39-113(d) requires the complaint to state the filing date of the governmental claim. Paragraph 9 omits that date. Plaintiff requests leave to correct that

omission to state the actual presentment date established by the service records. The exhibit includes a

June 5, 2026 personal-service cover letter and a receipt marking; the date a letter was written or mailed should not simply be substituted for the date the claim was filed with the proper office.

Gaston distinguishes a timely wrongful death claim with omitted governmental-claim compliance allegations from an untimely effort to add a new wrongful death claim. Plaintiff seeks correction of the allegations supporting the wrongful death claim already asserted, not the creation of an unpresented state claim. The objection to unpresented hypothetical additional torts therefore does not dispose of the state wrongful death claim actually before the Court.

## VIII. REDUNDANT DESIGNATIONS AND REMEDY LIMITATIONS SHOULD BE ADDRESSED NARROWLY

Plaintiff does not oppose removal of CPD as a separately named defendant if the Court determines that it lacks separate capacity to be sued, provided that removal is not characterized as a merits adjudication of the surviving claims against the City. Similarly, removal of redundant official-capacity designations should not dismiss individual-capacity claims or resolve the City's distinct liability on the merits.

Plaintiff does not press a separate Second Amendment count, a generalized affirmative constitutional entitlement to governmental protection, or an independent personal

constitutional claim based solely on her status as Spurlock's mother. The federal claims pursued here concern Spurlock's rights through his estate. Clarification of these theories does not abandon the Fourth Amendment injury alleged in Counts I and II.

*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981) bars punitive damages against the municipality under § 1983. Plaintiff does not oppose an order applying that limitation to the City and equivalent official-capacity claims. That ruling should not extend to the punitive-damages request against officers individually, which is outside this municipal motion and remains subject to separate defenses and proof.

Wyo. Stat. Ann. § 1-39-118(d) prohibits exemplary or punitive damages, prejudgment interest, and attorney's fees in a judgment against a governmental entity under the state-law claim. Plaintiff does not seek to evade that restriction. But it does not extinguish the separately pleaded request for a federal civil-rights fee award under 42 U.S.C. § 1988(b), if Plaintiff ultimately qualifies as a prevailing party on a federal claim. Nor should a ruling confined to state-law prejudgment interest be worded as a decision concerning every form of interest on every federal claim.

Finally, Wyo. Stat. Ann. §1-1-109(e) provides proportionate liability within the comparative-fault framework. Plaintiff does not ask the Court to impose joint and several liability contrary to that provision on the state negligence-based claim. Any order should nevertheless preserve the City's statutory peace-officer liability under § 1-39-112 and should not adjudicate allocation under the federal claims through a state-law limitation.

## IX. REQUESTED DISPOSITION

Plaintiff respectfully requests that the Court deny dismissal of the estate's federal claims on the asserted capacity ground, permit correction of the caption and capacity allegation to reflect the June 4, 2026 appointment, and allow submission of the appointment order through an appropriate procedure. Alternatively, Plaintiff requests the reasonable corrective opportunity required by Rule 17(a)(3).

Plaintiff further requests that the Court evaluate the municipal training allegations as a whole and deny the request for dismissal with prejudice. If the allegations are insufficient, Plaintiff requests a reasonable period to submit a proper Rule 15(a)(2) motion and proposed amended complaint addressing the identified deficiencies, without representing that a response brief substitutes for such a motion.

The Court should preserve the wrongful death claim against the City based on Maples's alleged tortious conduct; distinguish federal estate remedies from state wrongful death remedies; preserve any available § 1988 fee request; and confine any dismissal of redundant parties, unsupported additional theories, or unavailable damages to the precise capacity, claim, and remedy at issue. No ruling on this municipal motion should be construed to adjudicate the individual-capacity claims beyond the issues properly presented by the separate motions.

Dated November 25, 2026

Christopher J. King, P.C.

*Christopher J. King*

Christopher J. King
WSB 7-4532
PO Box 4
Worland, WY 82401
(307) 296-2888
chris@cjkattorney.com

CERTIFICATE OF SERVICE

I, Carly Sanchez, Paralegal for Christopher J. King hereby certify that on November 25, 2026 a true and correct copy of the foregoing document was served as follows:

| | | |
|---|---|---|
| Timothy W. Miller | [ ] | Email |
| Sean Towles | [ ] | Mail |
| Senior Assistant Attorneys General | [ ] | File and Serve Express |
| Wyoming Attorney General's Office | [ x ] | CM/ECF |
| 109 State Capitol | | |
| Cheyenne, WY 82002 | | |

Amy Iberline
159 N. Wolcott St., Ste. 400
PO Box 10700
Casper, WY 82602

*Christopher J. King*

Christopher J. King